Patricia J. KACZMAREK,
et al., Plaintiffs,

v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,
Defendant.

No. 98 Civ. 677(CLB).

United States District Court,
S.D. New York.

May 12, 1999.

Gary Weinstein, Weinstein & Assoc., New York City, Robert I. Harwood, Wechsler, Harwood, Halebian, New York City, for plaintiff.

Daniel Slifkin & Matthew Kaplan, Cravath, Swaine & Moore, New York City, Kenneth B. Wildstein, IBM Corp., White Plains, NY, for defendant.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

By motion filed on December 16, 1998 and heard on March 5, 1999, plaintiffs move pursuant to Federal Rule of Civil Procedure ("Rule") 23(a) and either 23(b)(2) or 23(b)(3), for certification of a plaintiff class consisting of:

All persons and entities who purchased an IBM Aptiva, ThinkPad, or PC 700, which was installed or furnished with an "Mwave" digital signal processor. Excluded from the Class are defendant IBM, its subsidiaries, parents, divisions, or affiliates, and its officers, directors, and employees.

In addition, the plaintiffs assert that creation of the following subclasses would be appropriate:

(A) The Aptiva A, C, & M Series Subclass (aka the "Dolphin" Subclass) consisting of:

"those Class members who purchased an IBM Aptiva A, C, or M Series personal computer ... that was installed or furnished with an "Mwave" digital signal processor."

(B) The Aptiva S Series Subclass (aka the "Stingray" Subclass) consisting of:

"those Class members who purchased an IBM Aptiva S series personal computer ... that was installed or furnished with an "Mwave" digital signal processor."

(C) The ThinkPad Subclass, consisting of:

"those Class members who purchased an IBM ThinkPad notebook computer that was installed or furnished with an "Mwave" digital signal processor."

(D) The PC 700 Subclass, consisting of:

"those Class members who purchased an IBM PC 700 personal/desktop computer that was installed or furnished with an "Mwave" digital signal processor."

(E) The USB Subclass, consisting of:

"those Class members who purchased an IBM Aptiva personal computer with an "Mwave" digital signal processor, which was advertised, described, marketed, or sold as being Universal Serial Bus (USB) 'ready.' "

IBM filed opposing papers on February 19, 1999 and plaintiffs filed reply papers on March 3, 1999. The Court granted leave to IBM to file a sur-reply and leave to the plaintiffs to respond. IBM filed the sur-reply on March 16, 1999 and plaintiffs filed their response on March 24, 1999, at which time the motion was fully submitted.

## FACTUAL BACKGROUND

Ms. Kaczmarek and the other plaintiffs filed this proposed class action January 30, 1998 on behalf of all persons and entities who from June 1994 to the present purchased an IBM Aptiva, ThinkPad, or PC 700 with an "Mwave" digital signal processor ("DSP"), and were thereby damaged economically. IBM allegedly stated and advertised that the Mwave provided advanced, integrated sound and modem functions on a single DSP. Plaintiffs claim that, due to an inherent and incurable hardware limitation, the Mwave is unable to provide the features and functions represented and warranted by IBM. IBM offered to fix or upgrade the Mwaves but, according to plaintiffs, IBM's fixes or upgrades not only failed to solve the problems but created new problems. IBM then began to offer informal compensation or replacement products to individual customers until such requests proliferated, at which time IBM ceased compensating customers. IBM allegedly threatened customers who had received informal compensation with termination from free access to an Internet forum

if they disclosed that they had received compensation.

Based on the above allegations, plaintiffs assert several types of claims against IBM: (1) breach of implied and express warranties under the Magnuson–Moss Act (the "Act") and common law (Counts I and VI); (2) violation of the New York State consumer protection law ("CPL") (Count II); (3) fraud (Count IV); (4) negligent misrepresentation (Count V); (5) breach of contract (Counts VII, VIII, IX and X); and (6) specific performance in the form of replacement or repair (Count XI).[1]

Plaintiffs assert that certification of a class is appropriate because all of the Mwave cards have the same design defect and substantially the same deficiencies in performance, including: (1) unstable modem connections resulting in frequent connect failures, dropped connections, and system freezes, hangs and crashes (this particular deficiency may be somewhat less severe with the "Stingray" Mwave installed in the Aptiva 2159S models); (2) inability to support telegaming (real-time playing of computer games over the internet against remote competitors); (3) inability to play "MIDI" sound files while the user is online; (4) frequent system freezes, crashes, hangs and error messages when audio and communications functions are used concurrently; (5) inability to support a variety of voice applications, including voice applications sold by IBM and included with the subject computers; (6) inability to support DirectX 3.0 or 5.0 (common sound standards for computer gaming); (7) inability to provide the promised full duplex speaker phone; (8) inability to support digital joysticks; and (9) inability to upgrade to faster modem speeds as promised. Plaintiffs also assert that certain models of the Aptiva were sold with a USB port and that IBM stated that those models would be USB ready with some free software. IBM has not provided the software, leaving plaintiffs with a worthless, non-functional USB port.

IBM asserts that the problems experienced by the plaintiffs are different because the products used by plaintiffs are different.

At issue in this case are forty-seven ThinkPad models, fifty-nine Aptiva models and nine PC 700 models containing six kinds of Mwave chips, placed on seven different types of Mwave cards. All of these combinations of models, chips and cards work differently. In addition, the representative plaintiffs did not buy all of these models, but rather bought some of the Aptiva and ThinkPad models; no representative plaintiff bought a PC 700. Some representative plaintiffs did buy an Aptiva that was supposedly USB ready.

IBM also identifies other potential causes for the problems experienced by plaintiffs: (1) hardware architecture and capabilities of the other chips and cards in the computer; (2) software drivers which affect sound, video and modem performance, speed, compatibility with software applications, compatibility with programming standards, and interaction with the internet; (3) speed of the CPU which affects sound, video and modem functions; (4) amount of base memory installed which affects performance of any function and affects ability to support software applications; (5) storage of information which reduces memory; (6) running too many applications at once; (7) IBM software application defects; (8) third-party software application defects or incompatibility with IBM sound cards; (9) overclocking the computer so that it runs above capacity; (10) use of improper or misuse of proper equipment; (11) failure to upgrade the Mwave software generally or in connection with an operating system upgrade; (12) failure of receiving modem; and (13) telephone line noise.

As to the alleged misrepresentation made to plaintiffs, plaintiffs assert that all representations were essentially the same, that is, that the Mwave provided advanced, integrated sound and modem functions on a single DSP and that it would work properly. Plaintiffs claim that IBM disseminated and all class members saw standardized advertisements, official sales manuals, brochures, leaflets, point of sale materials, and packaging materials. The answers to interrogatories number 6 and 7 indicate, however, that the

---

1. Count III was dismissed by a Memorandum & Order filed on December 10, 1998.

representations made to each plaintiff were different in content and form: plaintiffs Inscho, Leach, Posiadlik, Theierl, and Rizzo saw third-party newspaper advertisements; plaintiffs Gash, Inscho, Leach, Posiadlik and Theierl received oral representations by third-party sales people; plaintiffs Rizzo and Wells received oral representations from IBM sales people; and plaintiff Wells received faxes from IBM. As to representations in flyers, television advertisements, magazines, and on boxes, only a fraction of the plaintiffs who answered interrogatories claim to have relied on any one of those sources of IBM representations.

Finally, IBM asserts that the representative plaintiffs have taken atypical actions as computer users. Plaintiff Wells, for example, removed the IBM OS/2 operating system and replaced it with Windows 95. He disabled the Mwave modem functions while continuing to use the Mwave sound functions and added other modem cards. He also installed third-party software applications that repartitioned his hard drive. Plaintiff Inscho made hardware changes and overclocked his computer's motherboard. In addition, he improperly installed upgrades and admitted to line noise on his phone line, both of which could have caused his alleged problems.

### DISCUSSION

For certification of a class, FRCP 23(a) requires (1) that the class be so numerous that joinder of all members is impracticable ("numerosity"); (2) that there are questions of law or fact common to the class ("commonality"); (3) that the claims of the representative plaintiff are typical of the claims of the class ("typicality"); and (4) that the representative plaintiffs fairly and adequately protect the interests of the class ("adequacy"). In addition, FRCP 23(b) requires that one of three elements be satisfied. Plaintiffs assert that they fulfill the requirements of 23(b)(2) and 23(b)(3). FRCP 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a

whole." FRCP 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

■ As an initial matter, this Court may look beyond the pleadings in determining the appropriateness of class certification. *See Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 571 (2d Cir.1982) ("[The District Court must] develop a sufficient evidentiary record from which to conclude that the requirements of numerosity, typicality, commonality of question, and adequacy of representation have been met."). Both plaintiffs and defendant IBM have submitted numerous exhibits for the Court's consideration and the Court has considered them.

For the reasons stated below, plaintiffs' motion for class certification is denied. Although plaintiffs have satisfied the numerosity requirement, they have not satisfied the typicality and adequacy requirements of FRCP 23(a), nor have they shown that common questions of law or fact predominate over individual issues as required by FRCP 23(b)(3). The Court relies primarily on the latter reason in denying class certification under FRCP 23(b)(3). Plaintiffs also fail to satisfy the requirements of FRCP 23(b)(2).

*FRCP 23(a) & 23(b)(3)*

■ Plaintiffs claim that they satisfy FRCP 23(b)(3) because there are common questions of fact and law that predominate. They assert that the problems of the owners of each model of computer with the Mwave installed were similar and that the representations made to plaintiff purchasers were standardized representations. IBM argues, and the Court agrees, that there are too many different models of computers with different configured Mwaves and too many potential non-Mwave sources of each individual plaintiff's computer problems for there to be common questions of fact which predominate. The Court also agrees that there are no standardized representations relied upon by all of the plaintiffs and that third-party representations are not attributable to IBM.

In addition, the state laws that must be applied in this case differ materially.

Although plaintiffs characterize their experiences as similar, the similarity of plaintiffs' experiences "ends with the fact that they all purchased computers manufactured by [IBM and containing the Mwave]." *Brummel v. Leading Edge Products, Inc.*, 2/19/98 N.Y.L.J. 28 (Sup.Ct.N.Y. County) (finding under similar New York statute and case law, that class certification was inappropriate in case for breach of warranty by computer company). Plaintiffs here purchased 115 different models of IBM computers with six different Mwave chips placed on seven different Mwave cards. If a class were certified, a detailed factual inquiry into the differences between these models would be required. *See Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1009 (D.C.Cir.1986). Also, plaintiffs received different representations and different warranties when they purchased their different computers from different sources. Therefore, in order to address plaintiffs' CPL and fraudulent and negligent misrepresentation claims, the Court would have to examine each of the individual representations made to plaintiffs.

Plaintiffs claim that they have all had similar experiences with the sound/video/modem functions of their computers, but the evidence is that these experiences, to the extent they are even similar, may have been caused by any number of non-Mwave variables. Each computer user may have modified his or her computer hardware and software in ways that affect sound/video/modem capabilities and performance. Some of the named plaintiffs have reconfigured their hardware, overclocked their system, failed to upgrade and/or installed new operating systems and software drivers and applications. In addition, outside problems such as line noise, receiving modem problems, and internet problems may have caused these problems. Plaintiffs have not satisfied their burden of showing that the different models are not materially different or that other factors beyond the alleged design flaw are not material to the alleged problems. *See Walsh*, 807 F.2d at 1017–18 (denying class certification where different models and multiple potential causes existed). In this case, the individual factual issues predominate over the common issues of fact.

The Court has considered the proposed subclasses and finds that these subclasses will not cure the problems of such diverse individual factual issues and that if the litigation were so subdivided, it would be unmanageable. Accordingly, the class action is not a superior method for fair and efficient adjudication.

In addition, under *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), the Court will have to apply the law of all fifty states where those state laws differ materially. Plaintiffs argue that the state law to be applied to the Class Claims either is New York law or is similar to New York law. Defendants argue that the law of implied warranty, express warranty, deceptive practices, fraud, negligent misrepresentation, and contract differ materially from state to state, and that the applicable statutes of limitations differ materially from state to state.

Although claims of common law fraud and breach of contract may be similar from state to state, the states have diverse bodies of law on warranty and negligent misrepresentation, and each state has its own CPL. The state laws on these claims present different procedural and substantive elements, including differing requirements of privity, demand, scienter and reliance. In addition, bringing the case under the Magnuson–Moss Act does not make uniform the plaintiffs' warranty claims because liability under that Act depends on state law which differs on issues of express and implied warranties. *Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 248–49 (2d Cir.1986) (stating that "we believe that state law, including privity requirements, governs," and finding differences in the law of the six states involved). Defendant's counsel presents a lengthy analysis of the diverse laws of the various states and has shown sufficiently that many of the jurisdictions have different standards and elements of proof for the claims of breach of express and implied warranty, negligent misrepresentation and deceptive trade practices. The prospect of determining the

law of all fifty states and then applying the materially different laws that exist for some of the claims in this case would make this class action too complicated and unmanageable. Common questions of law do not predominate in this case.

██ As to the typicality requirement, the Court concludes that the representative plaintiffs are not typical plaintiffs. Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove defendant's liability." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992). Here, each plaintiffs decision to purchase an IBM computer with an Mwave, including that plaintiff's reliance upon any representation by IBM and the warranties received from IBM, is different. Also, each plaintiff treated his or her computer differently after purchasing the computer. In a case such as this, there may be no typical plaintiff.

In addition, some of the representative plaintiffs are atypical because they appear to have altered or misused their computers and/or Mwave cards, creating unique defenses against them. And finally, no representative plaintiff ever bought a PC 700 computer. Plaintiffs therefore fail to satisfy the typicality requirement of FRCP 23(a).

██ As to the adequacy requirement, the Court concludes that the representative plaintiffs cannot represent adequately the proposed class because they are not typical plaintiffs. Specifically, IBM may have individual defenses against them. As stated before, the interrogatories indicate that some of the representative plaintiffs may have altered their computers or misused their computers in ways that other class members did not. A plaintiff who alters or misuses a product cannot represent adequately the interests of one who did not, regardless whether the defective performance of the product was as to each a proximate cause of damages.

*FRCP 23(b)(2)*

██ Plaintiffs do not fulfill the requirements of 23(b)(2). Subsection (b)(2) "was never intended to cover cases like the instant one where the primary claim is for damages, but is only applicable where the relief sought is exclusively or predominantly injunctive or declaratory." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 564 (2d Cir.1968), *rev'd on other grounds*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *see also In re NASDAQ Market–Makers Antitrust Lit.*, 169 F.R.D. 493, 516 (S.D.N.Y.1996) (Sweet, J.) (citing other district courts in the Second Circuit); Advisory Committee Notes to the 1966 Amendments to FRCP 23 ("The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."). Here, plaintiffs primarily seek money damages for breach of contract, breach of warranty, misrepresentation and violation of the New York Deceptive Business Practices Act (the CPL). As an aside, they seek equitable relief in the form of an injunction forcing IBM to replace or repair their Mwave cards or their computers. Money damages, however, are an adequate remedy at law, making injunctive relief inappropriate. The Court therefore will not certify a class under FRCP 23(b)(2).

## CONCLUSION

For the foregoing reasons, the Court denies certification of the class.

SO ORDERED.