David JONES, et al., Plaintiffs,

v.

Glenn S. GOORD, Acting Commissioner of the New York Department of Correctional Services, et al., Defendants.

No. 95 Civ. 8026(WHP).

United States District Court,
S.D. New York.

Sept. 27, 1999.

Ira S. Sacks, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Plaintiffs.

Barbara K. Hathaway, Assistant Attorney General, Office of the Attorney General of the State of New York, New York City, for Defendants.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

This section 1983 action involves an array of claims under the First, Eighth and Fourteenth Amendments based on the conditions of confinement, and in particular the practice of double-celling inmates, at thirteen maximum security correctional facilities in New York. Defendants move for an order, pursuant to Fed.R.Civ.P. 12(b)(6), dismissing the second consolidated and amended complaint in this action. Plaintiffs move for an order, pursuant to Fed.R.Civ.P. 23, certifying a class and two subclasses of inmates who are aggrieved by the allegedly unconstitutional conditions at the thirteen facilities. Finally, the parties have unresolved discovery disputes which they have briefed in letters to the Court. These issues are addressed below.

### Procedural History and Background

This action began as four individual *pro se* actions that were consolidated pursuant to an order dated August 5, 1996. Plaintiffs filed a consolidated and amended complaint on August 12, 1996. Shortly thereafter, defendants moved to dismiss that amended complaint pursuant to Fed.R.Civ.P. 12(b)(1), (3), (6) and (7) on the grounds of lack of subject matter jurisdiction, improper venue, failure to state a claim, and failure to join a necessary party. In an order dated September 29, 1997, District Judge Stein denied defendants' motion, except that plaintiffs' claims against three individuals who were members of the

State Commission of Correction were dismissed.

On January 23, 1998, Judge Stein issued his decision in *Bolton v. Goord,* 992 F.Supp. 604 (S.D.N.Y.1998). That case involved the conditions of confinement at Woodbourne Correctional Facility, a medium-security correctional facility. After conducting a three-week bench trial, Judge Stein concluded that plaintiffs had failed to establish their constitutional claims and entered a judgment for the defendants. *See Bolton,* 992 F.Supp. at 624–30.

On June 12, 1998, plaintiffs in this action filed a second amended and consolidated complaint ("second amended complaint") incorporating the double-celling claims of twenty-one other *pro se* litigants incarcerated at maximum security facilities located throughout New York. The consolidated action was reassigned to this Court on November 25, 1998. The instant motions were submitted shortly thereafter.

In summary, the second amended complaint encompasses the claims of forty-five inmates who are, were or refused to be double-celled in one of thirteen[1] maximum security correctional facilities operated by the New York State Department of Corrections ("DOCS"). The thirty-nine page pleading contains essentially four claims. First, plaintiffs allege that the practice of double-celling inmates at maximum security DOCS facilities violates their rights under the Eighth and Fourteenth Amendments. Second, plaintiffs claim that they are forced to remain in double cells beyond the 60–day maximum period prescribed by N.Y.C.R.R. § 7621.6(j) through the threatened and actual use of disciplinary actions such as solitary confinement. Third, the second amended complaint alleges that the practice of double-celling prevents Muslim inmates from engaging in daily prayer rituals required by their faith. Finally, plaintiffs contend that the general conditions of confinement at Green Haven

Correctional Facility violate their rights under the Eighth and Fourteenth Amendments. The plaintiffs seek monetary, injunctive and declaratory relief on behalf of themselves and similarly situated inmates.

Defendants' Rule 12(b)(6) motion asks the Court to address new issues not raised in their motion to dismiss the earlier pleading, and to revisit the sufficiency of plaintiffs' claims in light of *Bolton v. Goord.* The Court pauses to make two observations. First, this case is not *Bolton.* The fact that double-celling at Woodbourne Correctional Facility, a medium-security prison, withstood constitutional challenge in *Bolton* is not necessarily dispositive of whether double-celling is constitutional at a maximum security facility like Green Haven.

Moreover, *Bolton* was decided after a three-week bench trial involving approximately 39 witnesses and over 150 exhibits. *See Bolton,* 992 F.Supp. at 607. Here, while the parties have conducted what appears to have been fairly extensive document discovery, none of that evidentiary record is before the Court on this motion. Thus, the Court must accept the material facts alleged in the second amended complaint as true, and draw all reasonable inferences in favor of plaintiffs. *See Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998); *Cohen v. Koenig,* 25 F.3d 1168, 1171–72 (2d Cir.1994). A court may grant a Rule 12(b)(6) motion only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). This standard places a substantial burden on the moving party. Bearing these principles in mind, the Court turns to defendants' arguments.

## Discussion

### A. *Eighth Amendment*

The second amended complaint contains allegations that DOCS' practice of double-

---

[1]. The second amended complaint purports to challenge the practice of double-celling inmates at the Attica Correctional Facility, the Auburn Correctional Facility, the Clinton Correctional Facility, the Coxsackie Correctional Facility, the Downstate Correctional Facility, the Eastern Correctional Facility, the Elmira Correctional Facility, the Great Meadow Correctional Facility, the Green Haven Correctional Facility, the Shawangunk Correctional Facility, the Sing Sing Correctional Facility, the Sullivan Correctional Facility and the Wende Correctional Facility (collectively, the "DOCS facilities").

celling inmates constitutes cruel and unusual punishment under the Eighth Amendment because the double cells are inordinately small, thereby increasing the frequency of inmate-on-inmate violence.[2] The pleading describes a number of violent assaults and rapes involving plaintiffs, as well as other inmates, at Elmira, Great Meadow, Green Haven, Sullivan and Wende Correctional facilities, *see* Second Am. Compl. ¶¶ 51, 66, 68, 71, 72, 76, although plaintiffs also allege that the "violence caused by double-celling pervades the [DOCS] Facilities." *Id.* at ¶ 52. Plaintiffs allege that they have been compelled to double-cell in cells "as small as 45 square feet of floor space per inmate." (Second Am. Compl. ¶ 49) The second amended complaint cites a standard promulgated by the American Correction Association that recommends a minimum of 25 square feet of unencumbered floor space for each inmate housed in a multiple occupancy cell. (Second Am. Compl. ¶ 48)

The second amended complaint also alleges that inmates are inadequately screened for histories of assaultive behavior before they are paired with other inmates in double cells. A number of incidents are described where demonstrably violent inmates serving long sentences were paired with more "vulnerable" inmates who were then physically and sexually assaulted by their cell mates. (Second Am. Compl. ¶¶ 63–76)

Citing standards promulgated by the American Society of Heating, Refrigeration and Air–Conditioning Engineers (Second Am. Compl. ¶ 58), the pleading also alleges that the air quality and ventilation in double cells at the DOCS facilities is poor, thereby increasing the risk of infection by airborne bacterial and viral diseases.[3] Three nonsmoking plaintiffs complain that they were placed in cells with smokers and, in two cases, suffered health problems as a result. (Second Am. Compl. ¶¶ 87–88, 94) Finally, plaintiffs allege that DOCS fails to adequately screen inmates for infectious diseases such as HIV and TB.

■ To establish their claim of cruel and unusual punishment under the Eighth Amendment, plaintiffs must allege that they have been subjected to conditions that constitute or cause the deprivation of basic human needs which are the "minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *see also Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir.1999) ("Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a conditions-of-confinement claim.") (quotation marks omitted).

In addition, prison officials must have acted with deliberate indifference in that they knew of, and disregarded, "an excessive risk to inmate health or safety." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994); *see Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994) ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk or serious harm exists, and he must also draw the inference.").

■ The practice of double-celling inmates, standing alone, does not constitute cruel and unusual punishment under the Eighth Amendment. *See Rhodes,* 452 U.S. at 347–48, 101 S.Ct. at 2400. Moreover, the Constitution does not guaranty uncrowded living conditions for all inmates. In the words of Chief Justice Rehnquist,

> nobody promised them a rose garden; and I know of nothing in the Eighth Amendment which requires that they be housed in a manner most pleasing to them, or

---

**2.** *See e.g.* Second Am. Compl. § 50 ("Defendants' practice of double-celling inmates in crowded cells with insufficient square footage to house two inmates has ... increased the potential for, and actual incidents of, violence and harm to the Plaintiffs, corrections staff and other inmates....").

**3.** Plaintiffs make essentially the same allegations concerning unsafe and unhealthy conditions of confinement at Green Haven Correctional Facility. (Second Am. Compl. ¶¶ 124–27)

considered even by most knowledgeable penal authorities to be likely to avoid confrontations, psychological depression, and the like. They have been convicted of crime, and there is nothing in the Constitution which forbids their being penalized as a result of that conviction.

*Atiyeh v. Capps*, 449 U.S. 1312, 1315–16, 101 S.Ct. 829, 831, 66 L.Ed.2d 785 (1981).

■ However, courts have recognized that "double celling can amount to an Eighth Amendment violation if combined with other adverse conditions." *Bolton*, 992 F.Supp. at 626 (*citing Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir.1996)); *see also Bell v. Artuz*, 1999 WL 253607,*3 (S.D.N.Y. Apr. 29, 1999) (98 Civ. 4710(MBM)) (*citing Bolton*). The question of what "other adverse conditions" are sufficient to elevate the practice of double-celling into an Eighth Amendment claim must be determined based on the totality of the circumstances. *See Wilson v. Seiter*, 501 U.S. 294, 304, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991) ("Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.").

■ In *Rhodes*, for example, the Supreme Court found that housing two inmates in a 62–square–foot cell did not constitute cruel and unusual punishment where plaintiffs did not establish deprivations of food, medical care, or sanitation, nor were they subjected to excessive violence. Notably, *Rhodes* involved a maximum security prison. *See Rhodes*, 452 U.S. at 339, 101 S.Ct. at 2395. Courts have reached the same conclusion in cases involving claims that double-celling led only to discomfort and increased tension and fear among inmates. *See, e.g., Waldo v. Goord*, 1998 WL 713809,*2–3 (N.D.N.Y. Oct. 1, 1998) (97 Civ. 1385(LEK)); *Bell*, 1999 WL 253607 at *4 (allegations of discomfort, together with poor ventilation in cell, lack of bacterial soap, pillows and lights for each prisoner does not "create a totality of circum-stances where 'the minimal civilized measure of life's necessities' is being denied."). In contrast, Eighth Amendment claims have been sustained where overcrowding is severe and accompanied by real hardships. *See e.g., Ingalls v. Florio*, 968 F.Supp. 193, 198 (D.N.J.1997) (routine housing of five or six inmates in cells designed for only one or two persons; inmates slept on the floor for periods as long as eleven months, endured unsanitary living conditions and contaminated food, and went without outdoor recreation for time periods in excess of one year); *Zolnowski v. County of Erie*, 944 F.Supp. 1096, 1112–13 (W.D.N.Y.1996) (severely overcrowded conditions and unsanitary conditions).

Defendants in the instant action argue that the adverse conditions that plaintiffs depict are not sufficiently severe to rise to the level of an Eighth Amendment violation. For example, defendants contend that incidents of inmate-on-inmate violence alleged by plaintiffs are isolated and *de minimus*, although defendants concede that the individual claims of five plaintiffs—Allah, Bomani, Long, Rodriguez and Thomas—require limited discovery and therefore cannot be resolved on this motion. (Defs.' Mem. at 28–29) Defendants make similar arguments concerning the medical screening and health issues raised in the second amended complaint. *See, e.g.,* Second Am. Compl. ¶ 82 (alleging that plaintiff Nelson "contracted strep throat as a result of double-celling"); ¶ 87 (alleging that plaintiff Barnett suffered "breathing problems, nausea and a sore throat" after being doubled-celled with a smoker).

Defendants' arguments are not without merit. Although no court approves of physical violence in the correctional system, the fact is that maximum security prisons house violent offenders, and confrontations between inmates are, to some extent, inevitable despite the best efforts of correction officers and prison officials to prevent them. Such incidents, standing alone, do not necessarily rise to the level of cruel and unusual punishment. Nor will "fear of assault" by other inmates support a constitutional claim. *Bolton*, 992 F.Supp. at 627.

At this stage in the litigation, however, the Court is required to view the adverse conditions alleged in the second amended complaint "in combination" and afford plaintiffs the benefit of all favorable inferences. In doing so, this Court is unable to conclude that "it appears beyond doubt" that plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 102. Indeed, in an earlier round of motion practice involving many of the same plaintiffs, District Judge Stein held that similar allegations were sufficient to survive a motion to dismiss, *see Jones v. Goord*, 95 Civ. 8026(SHS), slip op. at 8 (S.D.N.Y. Sept. 29, 1997), and as stated above, the intervening *Bolton* decision does not require a different result.

Accordingly, defendants' motion to dismiss plaintiffs' first and fourth causes of action alleging cruel and unusual conditions of confinement under the Eighth Amendment claim is denied.

### B. *Due Process*

■ Plaintiffs contend that the practice of double-celling inmates beyond the 60–day maximum period prescribed by N.Y.C.R.R. § 7621.6(j)[4] deprives them of a liberty interest without due process of law. To establish a liberty interest implicating the Due Process Clause, "a plaintiff must show that he suffered a significant hardship in relation to the ordinary incidents of prison life and that the state has granted its inmates, by regulation or by statute, a protected interest in remaining free from the confinement or restraint." *Bell*, 1999 WL 253607 at *4 (*citing Arce v. Walker*, 139 F.3d 329, 334 (2d Cir.1998)); *see also Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996). Plaintiffs cannot meet this two-part test because the regulation on which

they rely does not confer a protected liberty interest. *See Bolton*, 992 F.Supp. at 630 ("New York has not created a liberty interest in single cell housing.").

Accordingly, plaintiffs' second cause of action for violation of their due process rights under the Fourteenth Amendment is dismissed.

### C. *First Amendment*

Ten of the named plaintiffs allege that they are "unable to fulfill [their] religious obligations" as practicing Muslims due to double-celling. (Second Am. Compl. ¶¶ 111–121) Those ten individuals are plaintiffs Abdul, McFadden, Nelson, Martin, Brown, Muntaqim, Bomani, Walsh, Allah and DeVonish. Specifically, each of these plaintiffs alleges that "[i]n order to practice his religion, [they] must make five daily prayers facing east in a clean, quiet space." (*e.g.*, Second Am. Compl. ¶ 112)

■ To establish a First Amendment violation, plaintiffs must allege that defendants prevented them from engaging in conduct mandated by their faith without any justification reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 2404–05, 96 L.Ed.2d 282 (1987). Thus, in evaluating such claims, a court must typically balance the inmate's free exercise rights against legitimate prison security needs. *See Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.1990). In most cases, the balancing required by the First Amendment cannot be accomplished without the benefit of an evidentiary record. *See, e.g., Cruz v. Jackson*, 1997 WL 45348 (S.D.N.Y. Feb. 5, 1997) (94 Civ. 2600(RWS)).

■ Here, however, the second amended complaint fails to explain how plaintiffs were

---

4. That regulation provides:
 Inmates shall be moved on the basis of seniority from double occupancy housing units to individual or multiple occupancy housing units as such units become available; subject however to the facility's needs and the program assignments of the affected inmates. No inmate shall be confined in a double occupancy housing unit for a period of more than 60 days unless such inmate volunteers to remain in a double occupancy housing unit for a longer period of time. At the expiration of the 60 days, if an inmate does not volunteer to remain in a double occupancy housing unit he shall be moved to an individual or multiple occupancy housing unit at either his current facility or a new facility.
 9 N.Y.C.R.R. § 7621.6(j).

unreasonably prevented from engaging in their prayer rituals by the mere fact that they were confined in double cells. If, for example, plaintiffs allege that their religious tenets dictated that they pray alone five times a day, then the practice of double-celling might conceivably have some impact on their ability to practice their religion. Without more specific allegations, this Court is unwilling to allow plaintiffs to proceed on the premise that double-celling alone necessarily deprives them of the "clean, quiet space" allegedly mandated by their religious beliefs. The same allegation could readily be made with respect to single cells.

Plaintiffs Razi–Bey, Abdul, Abdur–Rashid and McFadden allege that they were held in disciplinary confinement when they refused to live in double cells based on their belief that they would be unable to fulfill their religious obligations. This claim also fails because it does not specify how the practice of double-celling prevented these plaintiffs from engaging in daily prayer rituals. In addition, since these plaintiffs had no right to single cell housing, their refusal to be double-celled was not a constitutionally protected activity and therefore will not support a retaliation claim. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 478 (2d Cir.1995).

Accordingly, plaintiffs' third cause of action alleging a violation of their free exercise rights under the First and Fourteenth Amendments is dismissed. The Court grants plaintiffs leave to replead their free exercise claim within thirty (30) days of the date of this memorandum and order.

### D. *Qualified Immunity*

 Defendants also argue, *inter alia,* that they are entitled to qualified immunity. The privilege of qualified immunity protects government officials sued in their individual capacity from liability for their performance of discretionary official functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Ying Jing Gan v. The City of New York,* 996 F.2d 522, 531 (2d Cir.1993).

 "Usually, the defense of qualified immunity cannot support the grant of a Fed. R.Civ.P. 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio,* 722 F.2d 1013, 1018 (2d Cir.1983); *see also Hutchinson v. McCabee,* 1999 WL 147712,*3 (S.D.N.Y. Mar. 15, 1999) (95 Civ. 5449(JFK)). Where "the complaint itself establishes the circumstances required as a predicate to a finding of qualified immunity" dismissal pursuant to Rule 12(b)(6) may be appropriate, *Green,* 722 F.2d at 1018, but that is not the case here since the pleading adequately alleges an Eighth Amendment claim based on plaintiffs' conditions of confinement. Accordingly, defendants' motion to dismiss on qualified immunity grounds is denied.

The Court has considered defendants' remaining arguments concerning standing, personal involvement and venue, and finds them to be without merit.

### E. *Class Certification*

Plaintiffs' motion for class certification identifies a number of classes and subclasses of inmates over which they seek certification under Fed.R.Civ.P. 23(b)(2) and 23(b)(3).

First, plaintiffs request that this Court certify under Rule 23(b)(2) a "Double–Celling Class" consisting of "each and every person who is or was incarcerated in the [DOCS] Facilities or who is presently in custody and who may be placed in a double-cell in the Facilities by DOCS." (Second Am. Compl. ¶ 128)

Second, plaintiffs request certification pursuant to Rule 23(b)(2) and (c)(4) of thirteen "Injunctive Relief Sub–Classes" consisting of "every person who is incarcerated in each such [DOCS] Facility or who is presently in custody and may be placed in a double-cell by DOCS in each such Facility." (Second Am. Compl. ¶ 129)

Third, with respect the Attica, Auburn, Eastern, Elmira, Green Haven, Shawangunk,

Sing Sing and Sullivan Correctional Facilities, plaintiffs seek certification pursuant to Rule 23(b)(3) of "Damages Sub–Classes" consisting of "every person who is or was incarcerated in those facilities and who is or was placed in a double-cell in those facilities." (Second Am. Compl. ¶ 130)

In order to maintain a class action, a party must first meet the following prerequisites listed in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The moving party must also show that the putative class fits one of the three categories set forth in Rule 23(b).

Here, plaintiffs contend that certification of the Double–Celling Class is appropriate under Rule 23(b)(2) because defendants have allegedly "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Plaintiffs seek to certify the injunctive relief and damages sub-classes under Rule 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

The burden of proving each of the requisite elements of Rule 23 rests with the party seeking certification. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997). A court must accept the complaint's allegations as true and should avoid a preliminary inquiry into the merits of the case. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). However, a court may consider material outside the pleadings in determining the appropriateness of class certification. *See Kaczmarek v. International Business Machines Corp.,* 186 F.R.D. 307, 311 (S.D.N.Y.1999).

Class certification should be granted if the court "is satisfied, after a rigorous analysis," that the requirements of Rule 23 have been met. *See General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). A class may be decertified if later events reveal that the reasons for granting class certification no longer exist or never existed. *See* Fed. R.Civ.P. 23(c)(1).

### 1. *Numerosity*

Turning to the first prerequisite under Rule 23(a), plaintiffs must show that the proposed class is so numerous that joinder of all members is impracticable. Impracticable does not mean impossible, but simply difficult or inconvenient. *See Primavera Familienstiftung v. Askin,* 178 F.R.D. 405, 409 (S.D.N.Y.1998). Precise enumeration or identification of the class members is not required. *See Jane B. by Martin v. New York City Dept. of Social Services,* 117 F.R.D. 64, 70 (S.D.N.Y.1987).

Plaintiffs contend, and defendants do not seriously dispute, that the Double–Celling class consists of thousands of current and former inmates. Although defendants question plaintiffs' ability to establish system-wide violations, and thus attempt to diminish the number of inmates who might actually be aggrieved by their conditions of confinement, that argument goes to the merits of plaintiffs' claims and must await development of a factual record. At this stage in the litigation, the numerosity requirement is met.

### 2. *Commonality and Typicality*

"The commonality and typicality requirements tend to merge . . . [t]he crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997). Commonality looks to whether there are common issues of law or fact

among plaintiffs, *see, e.g., In re Agent Orange Prod., Liab., Litigation,* 818 F.2d 145, 166–167 (2d Cir.1987), while the typicality requirement is satisfied where "the claims of the purported class members derive from the same set of events, and similar legal arguments are needed to establish liability on the part of the defendants." *Hua Mui v. Union of Needletrades, Indus., and Textile Employees, AFL–CIO,* 1999 WL 4918,*2 (S.D.N.Y. Jan. 5, 1999) (97 Civ. 7270(HB)). Some factual variation among class members' specific grievances will not prevent certification of claims on behalf of a class of plaintiffs. *See Marisol A.,* 126 F.3d at 377.

 "The requirement that there be common questions of law and fact is satisfied in an action by prison inmates when 'inmates have a common interest in preventing the recurrence of the objectionable conduct.'" *Abdul–Malik v. Coombe,* 1996 WL 706914,*2 (S.D.N.Y. Dec. 6, 1996) (96 Civ. 1021(DLC)) (*quoting Inmates of Attica Correctional Facility v. Rockefeller,* 453 F.2d 12, 24 (2d Cir.1971)). Common questions of law and fact clearly exist in this action. Plaintiffs allege, *inter alia,* that the practice of double-celling inmates at certain maximum security prisons, when taken in combination with other conditions common at those facilities, violates their Eighth Amendment rights. Although the injuries allegedly suffered or threatening each class member may not be identical, typicality does not require identity. The claims in this case are sufficiently similar to satisfy the requirements of commonality and typicality.

### 3. *Adequacy of Representation*

 Adequacy of representation requires that the class representative's attorney be qualified, and that the class representatives not have interests conflicting with other class members. *See In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Kuck v. Berkey Photo, Inc.,* 81 F.R.D. 736, 740 (S.D.N.Y.1979) (*quoting* 7 Wright & Miller, Federal Practice & Procedure § 1768, at 639 (1972)).

 Defendants argue that potential conflicts exist among the class representatives and the probable class members that would undermine the efficiency and fairness of class certification. For example, defendants suggest that some members of the proposed Double–Celling Class will have been aggressors in alleged incidents, while other members will have been victims. Defendants also suggest that there are many class members who consent to share double cells with specified inmates, and who could be deprived of their ability to do so.

At this juncture, this Court does not find the possibility of these hypothetical conflicts to be sufficiently concrete and serious as to defeat certification. Accordingly, the adequacy requirement of Rule 23(a)(4) is met.

### 4. *Certification of the Double–Celling Class Pursuant to Fed.R.Civ.P. 23(b)(2)*

 Having satisfied the prerequisites of Rule 23(a), plaintiffs must show that certification of the Double–Celling Class is appropriate under Rule 23(b)(2) because defendants have "acted or refused to act on grounds generally applicable to the class...." This Court finds that plaintiffs' allegations are sufficient to meet this requirement, notwithstanding defendants' argument that matters such as inmate screening is done on a case-by-case basis by different prison officials at different facilities. The second amended complaint adequately alleges the type of systemic failures that warrant class certification under Rule 23(b)(2).

Accordingly, plaintiffs' motion to certify the Double–Celling Class is granted. However, the Court modifies the definition of the class proposed by plaintiffs and certifies the following Double–Celling Class pursuant to Rule 23(b)(2):

> Every person who is or was incarcerated in the DOCS Facilities and who is or was double-celled in the Facilities by DOCS.

The Court declines to include as class members each and every DOCS inmate who "may be placed in a double-cell in the Facilities by DOCS." (Second Am. Compl. ¶ 130)

5. *Certification of Injunctive Relief Sub–Classes Pursuant to Fed.R.Civ.P. 23(c)(4)*

██ Although defendants maintain that class certification should be denied based on the arguably individualized nature of plaintiffs' respective claims, defendants concede that if the Double–Cell Class is certified then "dividing the class into subclasses by facility is certainly more logical and manageable than one massive class involving all facilities." Defs.' Mem. at 36. This Court agrees. Establishing subclasses for each of the thirteen DOCS facilities at issue will enhance the efficiency of the discovery process and streamline any future motion practice.

Based on the allegations in the second amended complaint, each Injunctive Relief Sub–Class appears to meet the requirements of Rule 23(b)(2). Accordingly, this branch of plaintiffs' motion for class certification is granted. The Injunctive Relief Sub–Classes will be governed by the Court's definition of the Double–Celling Class.

6. *Certification of Damages Sub–Classes Pursuant to Fed.R.Civ.P. 23(b)(3)*

██ To qualify for class certification under Rule 23(b)(3), plaintiffs must meet two requirements beyond the Rule 23(a) prerequisites. First, common questions must "predominate over any questions affecting only individual members", and second, class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). While this section raises similar issues as the typicality and commonality requirements of Rule 23(a), under Rule 23(b)(3) "the predominance criterion is far more demanding." *Amchem Prods.,* 521 U.S. at 623, 117 S.Ct. at 2250. In addition, the court should consider the extent to which each individual plaintiff has an interest in controlling the prosecution of his case and making decisions concerning settlement. *Id.*

This Court declines to certify the Damages Sub–Classes because common questions among class members clearly do not "predominate." Each plaintiffs' damages claim will require fact-specific inquiry into the particular circumstances of his injury, if any, and into the reasonableness of defendants' conduct. In addition, the nature and gravity of the injuries alleged in the second amended complaint is diverse. Some plaintiffs claim to have experienced only anxiety and fear, others have been exposed to second-hand smoke, and still others claim to have been brutally assaulted and permanently injured. Yet another group of plaintiffs may assert, should they successfully replead their claims, that their rights under the Free Exercise Clause were violated.

Under these circumstances, it is neither feasible nor desirable to determine monetary damages on a class-wide basis. Accordingly, plaintiffs' motion to certify the Damages Sub–Classes is denied.

Having denied plaintiffs' motion to certify the Damages Sub–Classes, the issue of notice pursuant to Fed.R.Civ.P. 23(c)(2) is moot. Pursuant to Rule 23(d), plaintiffs also request that defendants be required to (1) post notices of the existence of the Double–Celling Class in each of the DOCS facilities, and (2) provide individualized notice of the Double–Celling Class to each inmate who is placed in a double cell at the facilities. *See* Pls .' Mem. at 19. With respect to the first request, plaintiffs are directed to serve a proposed notice on defendants by October 4, 1999. By that date, plaintiffs will also advise defendants where in each DOCS facility they propose to have such notice posted. The Court will rule on plaintiffs' application after defendants have had an opportunity to respond to the proposed notice. As to plaintiffs' second request, no showing has been made that individualized notice is either necessary or appropriate. That request is denied.

*Conclusion*

For all these reasons, defendants' motion to dismiss the second amended complaint is granted in part, and denied in part, as follows: (1) plaintiffs' second cause of action for violation of their due process rights under the Fourteenth Amendment is dismissed; (2) plaintiffs' third cause of action alleging a violation of their free exercise rights under the First and Fourteenth Amendments is dismissed with leave to replead within thirty

(30) days of the date of this memorandum and order; and (3) in all other respects, defendants' motion to dismiss is denied.

Plaintiffs' motion for class certification is granted to the extent that the Court certifies the Double–Celling Class and the Injunctive Relief Sub–Classes, as modified. The Double–Celling Class is defined as:

> Every person who is or was incarcerated in the DOCS Facilities and who is or was double-celled in the Facilities by DOCS.

The Injunctive Relief Sub–Classes shall be governed by this definition. Plaintiffs' motion to certify Damages Sub–Classes is denied.

Plaintiffs' Rule 23(d) request for individual notice is denied. Plaintiffs will serve defendants with a proposed notice of class action by October 4, 1999, together with a description of where such notice should be posted within each DOCS facility. The Court will rule on the application after defendants have had an opportunity to respond.

The Court will conduct a pretrial conference with all counsel on October 8, 1999 at 3:45 p.m. to address outstanding discovery disputes and to establish a schedule for the completion of discovery.