SHELTER REALTY CORP., 101–103 Park Avenue, Inc., Penn Seventh Realty Corp., 600 Group 54th Street, Plaintiffs-Appellees,

v.

ALLIED MAINTENANCE CORP., Allied Building and Airport Services, Inc., Alpine Industries, Inc., Anchor Cleaning Service, Inc., Arcade Cleaning Contractors, Inc., Coastal Enterprises, Inc., Eastern Maintenance Service, Inc., MacLean Service Company, Inc., National Kinney Corporation, Prudential Building Maintenance Corporation, Temco Service Industries, Inc., and Triangle Maintenance Service, Inc., Defendants-Appellants.

No. 714, Docket 77–7545.

United States Court of Appeals, Second Circuit.

Argued March 20, 1978.

Decided from the bench March 20, 1978.

Opinion filed April 6, 1978.

Martin London, New York City (David S. Elkind, Gregory J. Wallance, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel), for defendant-appellant National Kinney Corp., and on behalf of all appellants.

Fred A. Freund, John A. Friedman, Mark C. Zauderer, Rena C. Seplowitz, Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant-appellant Prudential Building Maintenance Corp.

Raymond J. Horowitz, John A. Young, Edward S. Weltman, Graubard, Moskowitz, McGoldrick, Dannett & Horowitz, New York City, for defendants-appellants Allied Maintenance Corp. and Allied Building and Airport Services, Inc.

Charles G. Moerdler, Lawrence M. Handelsman, Alan Kolod, Strook & Strook &

---

Lavan, New York City, for defendant-appellant Temco Service Industries, Inc.

Barry H. Garfinkel, Edward J. Yodowitz, Skadden, Arps, Slate, Meagher & Flom, New York City, for defendant-appellant Alpine Industries, Inc.

William W. Prager, Spiro, Felstiner, Prager & Treeger, New York City, for defendant-appellant Anchor Cleaning Service, Inc.

Ira M. Millstein, Robert Brodegaard, Weil, Gotshal & Manges, New York City, for defendant-appellant Arcade Cleaning Contractors.

S. Edward Orenstein, Allan M. Pollack, S. Edward Orenstein, P. C., New York City, for defendant-appellant Coastal Enterprises, Inc.

Robert Morvillo, Thomas Fitzpatrick, Martin, Obermaier & Morvillo, New York City, for defendants-appellants Eastern Maintenance Service, Inc. and Triangle Maintenance Service, Inc.

Ira Postel, Shea, Gould, Climenko, Kramer & Casey, New York City, for defendant-appellant MacLean Service Co., Inc.

Stanley M. Grossman, New York City (Abraham L. Pomerantz, Marc I. Gross, Pomerantz, Levy, Haudek & Block, New York City, of counsel), for plaintiffs-appellees Shelter Realty Corp. and 600 Group 54th Street.

Robert N. Kaplan, New York City (Richard Kilsheimer, Kaplan, Kilsheimer & Foley, New York City, of counsel), for plaintiff-appellee 101–103 Park Avenue, Inc.

Sheldon P. Barr, New York City, for plaintiff-appellee Penn Seventh Realty Corp.

Before KAUFMAN, Chief Judge, and SMITH and MESKILL, Circuit Judges.

KAUFMAN, Chief Judge:

In this case, we are once again confronted with an attempted appeal of an interlocutory order granting class action certification. Since the issues raised manifestly do not satisfy the tripartite test of "fundamentality," "separability" and "irreparable harm" governing our Court's extremely limited exception to the final judgment doctrine in class certification cases, we dismissed this appeal in open court. But, in light of the burgeoning caseload borne by this Court,[1] the unnecessary burden on judicial resources imposed by futile appeals such as the one at bar has grown increasingly heavy. Accordingly, we pause to reiterate briefly, and to place in relatively concise form, the guiding principles controlling our jurisdiction to review orders granting class action status, in the hope that we may dissuade future litigants from bringing similar appeals, doomed by their "garden-variety" nature to dismissal, while leaving the door open to those rare cases which raise issues of exceptional importance requiring immediate review.

## I.

The facts necessary to our decision may be limned with broad strokes. Appellants, defendants below,[2] are twelve building

---

1. Filings in our Court increased 111 percent during the decade ending in July 1977. During the 1976–77 Term alone, we disposed of 2,098 appeals. *See* Address by Chief Judge Kaufman, "Cost and Delay—The Demons of the Judicial Process; State of the Judicial Business in the Second Circuit," Second Circuit Judicial Conference, Buck Hill Falls, Pennsylvania, September 9, 1977 in *New York Law Journal*, Sept. 12, 1977, at 4, col. 1. But, perhaps an even more serious consequence of unnecessary appeals at the preliminary stages of litigation than the taxation of judicial resources is the burden imposed on the litigants. As the author of this opinion noted in the address cited above:

> Too often people are deterred from entering the courthouse door by the prospect of exorbitant expense and interminable delays. . . . Litigation too often resembles the duels of the young gentlemen of San Francisco in the last century, who matched each other tossing gold coins into the Bay until one cried "Enough!" As an alternative to pistols, this procedure has much to recommend it. But it is the very antithesis of law.

2. The named defendants-appellants are the Allied Maintenance Corp., Allied Building & Airport Services, Inc., Alpine Industries, Inc., Anchor Cleaning Service, Inc., Arcade Cleaning Contractors, Inc., Coastal Enterprises, Inc., Eastern Maintenance Service, Inc., MacLean

maintenance companies alleged to have conspired to restrain competition in their industry, in violation of Section 1 of the Sherman Act.[3] They seek to appeal, pursuant to 28 U.S.C. § 1291 (1970), an interlocutory order by Judge FRANKEL certifying this civil suit as a class action. The plaintiff class consists of all persons who purchased building maintenance services[4] in New York County during the period January 1, 1970 through October, 1974. The named plaintiffs-appellees[5] are corporate entities that purchased such services from some of the appellants during the class period.

The allegations of the consolidated complaint[6] track the language of a criminal information to which all of the appellants have pleaded *nolo contendere*.[7] Plaintiffs-appellees charge that, pursuant to a conspiracy, the appellants engaged in a variety of anti-competitive practices, including the submission of collusive bids, allocation of customers, and compensation by one appellant to another if the latter's customers relocated in the former's territory. The alleged effect of this conspiracy was the stabilization of artificially high prices in all aspects of the building maintenance industry.[8]

In August 1976, appellees moved for class certification under Fed.R.Civ.P. 23(b)(3) and (c)(1). Appellants resisted, "at every trench and barricade emplaced among the subdivisions of Rule 23," as Judge Frankel commented in the opinion below.[9] Appellants' primary arguments against class certification were, and remain on appeal, that common questions of law or fact do not predominate over questions affecting only individual class members and that the class action would be unmanageable. Both contentions rest in large measure on appellants' assertion that building maintenance services are a non-fungible commodity—that is, each customer has unique requirements and purchases services either after face-to-face negotiations or the submission of individually solicited bids. Appellants argue that, since liability must be predicated on proof of injury to, or impact on, each class member, the right to recovery, as well as the amount of damage, will necessarily

Service Co., Inc., National Kinney Corp., Prudential Building Maintenance Corp., Temco Service Industries, Inc., and Triangle Maintenance Service, Inc. By stipulation, defendants' subsidiaries have also become parties to the action.

**3.** 15 U.S.C. § 1 (1976).

**4.** The complaint defines "building maintenance services" as "the providing of janitorial, repair, security, elevator, landscaping and other services in connection with the use and occupancy of commercial, industrial or institutional buildings, including but not limited to, interior cleaning and dusting, removal of trash, washing and waxing floors, vacuuming and cleaning carpets; cleaning and washing windows, walls and window coverings; servicing washrooms, operating and repairing elevator, heating, lighting and ventilation facilities; providing security guard services; caring for landscaping; preparation of new buildings for occupancy and other related activities."

**5.** The named plaintiffs are Shelter Realty Corp., 101–103 Park Avenue, Inc., Penn Seventh Realty Corp., and 600 Group 54th Street. Affidavits submitted in support of the motion to dismiss this appeal reveal that 101–103 Park purchased approximately $900,000 worth of services from defendant Allied Building & Airport Services during the relevant period, and Penn

Seventh bought services valued at about $100,000 from defendant Temco Service Industries and its subsidiaries. Shelter Realty, a nominee for 600 Group 54th Street, also purchased an undisclosed amount of services from Temco and solicited bids from others.

**6.** Shelter Realty Corp. filed the original complaint in this action in January 1976. By order dated August 16, 1976, Shelter Realty's action was consolidated with actions brought by 101–103 Park Avenue, Inc. and Penn Seventh Realty Corp. 600 Group 54th Street was added as a party plaintiff by order dated December 27, 1976. Plaintiffs-appellees filed the amended consolidated complaint in October 1977.

**7.** *United States v. Allied Maintenance Corp.*, 76 Crim. 613 (July 2, 1976 S.D.N.Y.) Each appellant was fined $15,000 in the criminal action.

**8.** It should be noted that, in April 1976, International Telephone & Telegraph Corp. filed a substantially similar complaint against appellants. ITT intends to pursue its action independent of the class.

**9.** *Shelter Realty Corporation v. Allied Maintenance Corporation*, 75 F.R.D. 34, 36 (S.D.N.Y. 1977).

depend on the particular circumstances of each of the 25,000 class members.[10] Accordingly, appellants contend, the trial of individual issues would predominate. In addition, it is claimed the entire action would be unmanageable.

The trial court rejected these arguments, finding the common question of an overall conspiracy having the indirect effect of raising the general price level predominant over individual issues. Judge Frankel noted that impact might be presumed from proof of an overall conspiracy.[11] And damages might well be susceptible to a formulary approach. He concluded that, at that early stage of the litigation, the class action appeared manageable. The judge also ruled that the named plaintiffs had typical claims, possessed financial resources sufficient to meet the responsibility of class representation, and were in all respects adequate class representatives.

Judge Frankel refused to certify an appeal under 28 U.S.C. § 1292(b) (1970) because the "determination allowing a class action to proceed involves a particular appraisal of specific facts and is to a measurable extent discretionary." Accordingly, he concluded, "this is not a suitable case for burdening the Court of Appeals." We can only wish that appellants, represented as they are by a stunning array of able counsel, had heeded his words.

## II.

Since this appeal has not been certified by the district court, it must be dismissed unless the order falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949).

A review of the cases that have dealt with the issue presented to us may serve to clarify any confusion which may persist on the question. Several circuits have found that orders certifying a class action, because of their tentative nature, can never satisfy the *Cohen* doctrine.[12] But the Second Circuit, following a brief evolutionary period, has laid down its rule permitting an appeal of such an order only when three prerequisites are present in conjunction: (1) the class action determination must be "fundamental to the further conduct of the case"; (2) review of the order must be "separable from the merits"; and, (3) it must appear that the order, unless reviewed, will cause "irreparable harm to the defendant in terms of time and money spent in defending a huge class action." *See, e. g., Schlick v. Penn-Dixie Cement Corp.*, 551 F.2d 531, 533 (2d Cir. 1977); *Parkinson v. April Industries, Inc.*, 520 F.2d 650, 656 (2d Cir. 1975); *Handwerger v. Ginsberg*, 519 F.2d 1339, 1341 (2d Cir. 1975); *Kohn v. Royall, Koegel & Wells*, 496 F.2d 1094, 1098–99 (2d Cir. 1974). Each element of this rule has been carefully defined in *Kohn* and subsequent cases.

---

**10.** The estimate of class size has grown, by stipulation, from about 10,000 to 25,000 members since Judge Frankel issued his opinion.

**11.** Judge Frankel's conclusion in this regard was not without foundation in the decisions of this court. *See In re Master Key Antitrust Litigation*, 528 F.2d 5, 12 n.11 (2d Cir. 1975).

**12.** The Seventh and Third Circuits forbid appellate review of any class certification decision. *See King v. K. C. Southern Industries*, 479 F.2d 1259 (7th Cir. 1973); *Hackett v. General Host Corp.*, 455 F.2d 618 (3d Cir.), *cert. denied*, 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972). Judge Friendly has suggested that this circuit

adopt a similar holding, permitting review only when the appeal is certified by the district judge, in his concurrence in *Parkinson v. April Industries, Inc.*, 520 F.2d 650, 658–60 (2d Cir. 1975). In the Ninth and Sixth Circuits appeals lie only from a *denial* of class certification and then only if that denial sounds the "death knell" of the action. *See Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Ott v. Speedwriting Publishing Company*, 518 F.2d 1143, 1148–49 (6th Cir. 1975); *Walsh v. City of Detroit*, 412 F.2d 226 (6th Cir. 1969).

*Fundamentality*

The well-established rule of this circuit is that a class action determination is "fundamental" only when the individual damage claim of the class representative is so small that the suit would not continue as a private action.[13] *See, e. g., In re Master Key Antitrust Litigation,* 528 F.2d 5, 10–11 (2d Cir. 1975); *Parkinson v. April Industries, Inc., supra,* 520 F.2d at 656; *Handwerger v. Ginsberg, supra,* 519 F.2d at 1341; *Kohn v. Royall, Koegel & Wells, supra,* 496 F.2d at 1099.

It is readily apparent that the viability of the present action does not turn on class certification. If the named plaintiffs are successful, their damages, when trebled, can be expected to be substantial. Moreover, the statutory provision allowing recovery of attorneys' fees gives plaintiffs' counsel an incentive to pursue this action regardless of the size of the claims. *See Kohn v. Royall, Koegel & Wells, supra,* 496 F.2d at 1100; *Shayne v. Madison Square Garden Corp.,* 491 F.2d 397, 402 n.15 (2d Cir. 1974).

*Separability*

In addition to fundamentality, appellants must also show that an exceptional issue exists that can be conclusively determined without delving into the merits of the underlying claim. Accordingly, we will review finite determinations of judicial power—such as the notice issue decided in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)—but not discretionary decisions which vary from case to case. *See General Motors Corporation v. City of New York,* 501 F.2d 639, 646–47 (2d Cir. 1974).

As noted earlier, appellants' major contention is that common questions do not predominate because a determination of liability, as well as damages, depends on a showing of impact on each class member. A similar claim was raised in *In re Master Key Antitrust Litigation,* 528 F.2d 5 (2d Cir. 1975). In dismissing that appeal, we noted that "the question of what must be proven to establish liability is not a matter separable from the claim for relief." 528 F.2d at 12.

Indeed, *Windham v. American Brands, Inc.,* 565 F.2d 59 (4th Cir. 1977) (en banc), *petition for cert. filed,* —— U.S. ——, 98 S.Ct. 1605, 55 L.Ed.2d 58 (1977), the primary case upon which appellants rely in their appeal for the principle that class certification is inappropriate when there are individual issues of impact, supports the view that Judge Frankel's discretionary decision should be left undisturbed. *Windham,* involving a denial of class action certification, decided that issues such as the predominance of common questions and manageability were so largely factual that they should be left to the lower court's discretion.[14]

This Court has repeatedly held that the predominancy question is not an issue capable of separation from the merits. *See Parkinson v. April Industries, Inc., supra,* 520 F.2d at 656; *General Motors Corporation v. City of New York, supra,* 501 F.2d at 647; *Kohn v. Royall, Koegel & Wells, supra,* 496 F.2d at 1100. Similarly, the inadequacy of class representation, another of appellants' contentions, has also been held unsuitable for interlocutory review under the final judgment doctrine. *See Schlick v.*

---

**13.** Of course, this definition of "fundamentality" is but a mirror-image of the "death knell" doctrine applied in appeals of decisions denying class certification. *See Eisen v. Carlisle & Jacquelin,* 370 F.2d 119, 121 (2d Cir. 1966), *cert. denied,* 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967) (*Eisen I*). *See also In re Master Key Antitrust Litigation, supra,* 528 F.2d at 10–11.

**14.** *Windham* did not raise the issue of the propriety of appeal under 28 U.S.C. § 1291 since the order denying class status had been certified under Fed.R.Civ.P. 54(b). *See also Link v. Mercedes Benz of North America, Inc.,* 550 F.2d 860 (3d Cir.) (en banc), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977) (district court's certification under 28 U.S.C. § 1292(b) of order granting class status improper since manageability of action involving separate proof of damages for each of 300,000 class members must be left to informed discretion of the trial judge.)

*Penn-Dixie Cement Corp.*, 551 F.2d at 533; *Phillips v. Tobin*, 548 F.2d 408, 410 (2d Cir. 1976); *Handwerger v. Ginsberg, supra*, 519 F.2d at 1341; *Kohn v. Royall, Koegel & Wells, supra*, 496 F.2d at 1100. Accordingly, we find that the issues raised by appellants do not satisfy the "separability" requirement.[15]

*Irreparable Harm*

It is also urged that appellants will be irreparably injured if we do not allow this appeal. In considering this question, "[a]ttention . . . must be directed to the incremental costs and time in defending the particular action if it is maintained as a class action." *Kohn v. Royall, Koegel & Wells, supra*, 496 F.2d at 1100. In this case, there is a strong argument that the incremental burden imposed by the class action will not be substantial. A countywide conspiracy would still have to be proved were this suit to proceed as a private action. And appellants will also be defending a very similar action by the International Telephone & Telegraph Corporation. Moreover, the burden of class litigation *ipso facto* does not justify immediate appellate review. *See Parkinson v. April Industries, Inc., supra*, 520 F.2d at 653–54.[16]

## III.

Although perfunctorily acknowledging the tripartite test, appellants in reality are asking us to modify our rule, to permit an appeal of a class certification order whenever the class is numerous.[17] We decline this invitation to open the floodgates to the wave of appeals of discretionary class certification decisions which would necessarily ensue from the adoption of appellants' ill-defined suggestion. Accordingly, we have dismissed the appeal.

---

**15.** As to appellants' argument that the trial court should not have decided the class motion on the basis of the complaint, we simply note that Judge Frankel was prohibited from conducting an inquiry into the merits by the Supreme Court's decision in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (*Eisen IV*); that he did consider the criminal information and numerous affidavits and documents relating to the class issues; and that we have previously held that it is proper to accept the complaint allegations as true in a class certification motion. *See Shayne v. Madison Square Garden Corp., supra*, 491 F.2d at 398; *Green v. Wolf Corporation*, 406 F.2d 291, 294 n.1 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

**16.** In *Parkinson*, the defendants in a class action also argued that "class action status imposes such staggering burdens . . . that prompt appeal should lie." While conceding

that "the impact of large plaintiff class actions upon defendants is great," the court dismissed the appeal for failure to satisfy all three prongs of our test for appealability. *See* 520 F.2d at 653–54.

**17.** In espousing this position, appellants place heavy reliance on our decisions in *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973) (*Eisen III*), *rev'd on other grounds*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) and *Herbst v. International Telephone & Telegraph*, 495 F.2d 1308 (2d Cir. 1974). These opinions, written during the evolutionary period to which we have referred, preceded the first complete enunciation of the tripartite test in *Kohn*. Accordingly, they must be read in the light of the construction they have been given in subsequent cases. *See Parkinson v. April Industries, Inc., supra*, 520 F.2d at 656, nn.6–7.