KAREN L. by her mother JANE L., Grisel Hernandez, K.P. by and through his mother D.P., A.M. by and through her mother C.D., Plaintiffs,

v.

PHYSICIANS HEALTH SERVICES, INC., and Patricia Wilson–Coker, in her capacity as Commissioner of the State of Connecticut, Department of Social Services, Defendants.

No. CIV.A. 3:99 CV 2244CFD.

United States District Court,
D. Connecticut.

July 30, 2001.

Shelley A. White, Sheldon V. Toubman, New Haven Legal Assistance, New Haven, CT, Douglas M. Crockett, Connecticut Legal Services, Willimantic, CT, Randi Faith Mezzy, Connecticut Legal Services, Waterbury, CT, Priya Sinha Cloutier, Connecticut Legal Services, New London, CT, Judith D. Meyer, Avon, CT, for plaintiffs.

Craig A. Raabe, Theodore J. Tucci, Bradford S. Babbitt, Edward J. Heath, Michael J. Kolosky, Robinson & Cole, Hartford, CT, Christopher N. Sipes, Charles A. Miller, Tracey H. Cohen, Covington & Burling, Washington, DC, Hugh Barber, Richard J. Lynch, Karen H. Fritzinger, Tanya Feliciano, Attorney General's Office, Health & Human Services, Patricia Ellen McCooey, Attorney General's Office, Mitchell R. Harris, Jessica J. Mitchell, Day, Berry & Howard, Hartford, CT, Paul A. Lagasse, U.S. District Court, Chambers of Hon. Stefan R. Underhill, Bridgeport, CT, for defendants.

Charles C. Hulin, Attorney General's Office, Hartford, CT, Matthew P. Lundy, Pullman & Comley, Bridgeport, CT, for movants.

### RULING ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

DRONEY, District Judge.

The plaintiffs bring this suit pursuant to 42 U.S.C. § 1983 against Physicians Health Services, Inc. ("PHS") and Patricia Wilson–Coker, in her capacity as Commissioner of the State of Connecticut Department of Social Services ("the Commissioner"), alleging violations of the federal Medicaid statute, 42 U.S.C. § 1396a(a)(3), and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. The plaintiffs also claim that defendant PHS violated the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42–110a, *et seq.* ("CUTPA") and the Connecticut Unfair Insurance Practice Act, Conn.Gen.Stat. § 38a–815, *et seq.* ("CUIPA").

PHS is a managed care organization that contracts with the Department of Social Services ("DSS") to provide health services covered under Connecticut's Medicaid plan to recipients enrolled in its plan. The plaintiffs challenge the alleged failure of both defendants to provide adequate written notice of adverse actions taken in regard to coverage claims made by enrollees in PHS's Medicaid-managed care plans, and their alleged failure to ensure that such Medicaid enrollees can apply for, and be furnished with, prescription drug benefits without delay.[1] They attribute this delay to inadequacies in the operation of PHS' pharmacy benefits policy, and in particular, its preferred drug formulary system.[2] The plaintiffs also challenge the alleged failure of the Commissioner to ensure that the

---

1. The latter claim was included for the first time in the plaintiff's amended complaint, which the Court granted permission to file on February 14, 2001.

2. Under this system, PHS will not cover the cost of certain prescription drugs specified in the formulary, or list of medications, unless its members, including Medicaid members, through their providers request prior approval from PHS. *See* Complaint, ¶ 51. Pre-approval also is necessary for drugs not listed on the preferred drug formulary. *See id.*

enrollees are afforded adequate hearing rights to challenge denials of coverage.

In addition to declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, the plaintiffs seek an injunction requiring:

(1) That PHS provide adequate written notices to Medicaid managed care enrollees at the time of actions taken concerning their claims for services;

(2) That the Commissioner take all actions necessary to ensure that PHS provide such notices;

(3) That the Commissioner provide an expedited state fair hearing to enrollees to challenge decisions by PHS;

(4) That PHS ensure that its Medicaid enrollees are able to apply for, and be furnished with, prescription drug benefits without delay; and

(5) That the Commissioner take all actions necessary to ensure that PHS permits its Medicaid enrollees to apply for, and be furnished with, prescription drug benefits without delay.

The plaintiffs also request an award of attorney's fees under 42 U.S.C. § 1988.

Pending is the plaintiffs' renewed and amended motion for class certification [Doc. # 125].[3] It seeks certification of a class consisting of the following individuals: "All past, current, and future Medicaid recipients who were or currently are enrolled in, or who in the future will be enrolled in, any managed care plan offered by defendant PHS to Medicaid recipients, under contract with defendant Commissioner." Am.Mot. Class Certification at 1–2. The plaintiffs contend that their claims satisfy the class action requirements of Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure. For the following reasons, the plaintiffs' motion is GRANTED.

## I. Background

The original named plaintiffs in this case are Karen L. and Grisel Hernandez. On February 14, 2001, the Court permitted two additional individuals, K.P. and A.M., to intervene as named plaintiffs and prosecute under fictitious names. All of the plaintiffs are Medicaid recipients whose health care coverage is provided by PHS.

### A. Karen L.

According to the plaintiffs' allegations, Karen L., a minor, sought mental health treatment under a PHS Medicaid plan to cope with past sexual abuse. On several occasions in 1998 and 1999, her therapist requested approval for several series of psychological counseling sessions. Coverage for each series was either denied or partially denied by PHS and its predecessor,[4] through their behavioral health managed care subcontractor. Karen L.'s mother, Jane L., never received written notice of the denials and partial denials (though the therapist was informed of the sessions that were approved), was never informed of the reasons for the action taken, and never received information regarding her appeal rights concerning the denials of treatment.

### B. Grisel Hernandez

Grisel Hernandez also sought coverage under a PHS Medicaid plan for an exploratory laparoscopic procedure related to a gynecological illness, which PHS denied without adequately indicating proper authority for that decision.

In addition, Hernandez alleges that she was twice refused prescription refills, and pharmacists informed her that PHS would not cover the prescription. According to the plaintiffs, she was not aware that if prior authorization had been obtained, she could have received the refills. She was never informed of the reasons for the denials, and

---

**3.** On September 8, 2000, the Court denied the plaintiffs' original motion for class certification, without prejudice, in light of jurisdictional issues raised in the defendants' motions to dismiss pending at that time. The plaintiffs sought reconsideration of that ruling and filed the instant motion. The Court denied the plaintiffs' motion for reconsideration, as well as the defendants' motions to dismiss.

**4.** In 1999, PHS apparently acquired M.D., the company that originally provided Karen L.'s coverage. Both companies used the same behavior-

attributes this to defects in PHS's policies relating to non-formulary medications that require prior authorization by a physician or pharmacist. Ms. Hernandez also claims that these defects in the drug formulary system prevented her from receiving her prescription with reasonable promptness, as required by Medicaid statutes.

### C. K.P.

Plaintiff K.P., a minor, sought coverage for a topical anesthetic prescribed by his physicians. to relieve the pain of injections and intravenous treatment for several chronic medical conditions. The medication prescribed for K.P. apparently was not included in PHS' formulary of pre-approved medications, but an alternative medication was on that list. PHS denied coverage for the prescribed medication through the use of a notice that the plaintiffs claim was deficient. The plaintiffs also contend that K.P. was never informed that a pre-approved alternative medication could have been substituted for the prescribed anesthetic.

In addition, K.P. alleges that his mother did not receive written notification of PHS's decision to deny coverage for six hours of "case management" services performed by K.P.'s behavioral therapist, and that as a result of this lack of notice, she was unable to appeal the decision.[5]

### D. A.M.

A.M. is a minor suffering from post-traumatic stress disorder, a condition for which her psychiatrist prescribed an anti-depressant medication. When A.M.'s mother attempted to fill the prescription for her daughter, she was informed by a pharmacist that PHS would not cover the medication. She contends that she never received any written notification informing her that the prescription for the medication was denied, and that as a result, she was not able to appeal the decision. Given these difficulties, she also argues that PHS failed to provide

her with the prescription medication with reasonable promptness. Like Ms. Hernandez, A.M. attributes the delay to defects in the preferred drug formulary system, as A.M.'s mother, therapist, psychiatrist, and pharmacist apparently were initially unaware that the medication would have been covered if the physician or pharmacist initiated the prior authorization procedure.[6]

## II. Discussion

### A. Class Certification Standard

Under Rule 23, there is a two-part inquiry for class certification. First, the Court must determine whether the plaintiff satisfies the four requirements of section (a), which provide:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *see also General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155–56, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Marisol A. v. Giuliani*, 126 F.3d 372, 375–78 (2d Cir.1997) (per curiam). Second, the Court must determine whether the plaintiffs have satisfied one of the prongs of section (b). Here, the plaintiffs argue that a class is maintainable under section (b)(2) of Rule 23, which provides, in relevant part:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . .

(2) the party opposing the class has acted or refused to act on grounds generally

---

al health managed care subcontractor, Pro Behavioral Health.

**5.** K.P.'s therapist apparently received a notice of the denial.

**6.** K.P.'s psychiatrist and therapist apparently initiated this procedure after they learned of the *initial denial. The drug was later approved* and the prescription filled, though K.P.'s mother was not made aware of this fact for two weeks.

applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2); *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Marisol A.,* 126 F.3d at 378.

▮ In applying Rule 23, a court is to use a liberal, not restrictive, interpretation. *See Civic Ass'n of the Deaf of New York City, Inc. v. Giuliani,* 915 F.Supp. 622, 632 (S.D.N.Y.1996). However, a court still must employ a "rigorous analysis" to ensure that the requirements of the Rule are satisfied. *General Tel. Co.,* 457 U.S. at 161, 102 S.Ct. 2364; *Sheehan v. Purolator, Inc.,* 839 F.2d 99, 103 (2d Cir.1988); *Civic Ass'n of the Deaf,* 915 F.Supp. at 632. Further, a court is to determine whether an action shall be maintained as a class action based on the allegations of the complaint, which are accepted as true. *See Shelter Realty Corp. v. Allied Maint. Corp.,* 574 F.2d 656, 661 n. 15 (2d Cir.1978); *Civic Ass'n of the Deaf,* 915 F.Supp. at 632. It may not consider the ultimate validity of the plaintiff's claim. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Still, a court may consider certain material in addition to the pleadings in determining whether class certification is appropriate.[7] *See Reynolds v. Giuliani,* 118 F.Supp.2d 352, 388 (S.D.N.Y.2000). Although the defendants requested an evidentiary hearing on the plaintiff's motion for class certification, the Court concludes that the allegations of the complaint, the information gathered during oral argument on the class certification motion, and the evidence presented by the parties provide a sufficient basis to make this determination.

## B. Rule 23(a) Applied to the Instant Case

### 1. Numerosity

According to the named plaintiffs, over 77,000 Connecticut Medicaid recipients are currently enrolled in PHS's Medicaid managed care plans. Nevertheless, the defendants argue that the plaintiffs have not satisfied the numerosity requirement because they have not provided a reasonable estimate of the size of the potential class. *See Garfinkel v. Memory Metals, Inc.,* 695 F.Supp. 1397, 1401 (D.Conn.1988) (quoting *Deary v. Guardian Loan Co., Inc.,* 534 F.Supp. 1178, 1190 (S.D.N.Y.1982) (explaining that plaintiffs need not prove the exact number of proposed class members as long as they can reasonably estimate the size of the class)).

▮ Here, the size of the class is supported by the allegations of the amended complaint and the evidence offered by the plaintiffs. While it has not been alleged that all of the enrollees in PHS's Medicaid managed care plans have been denied requested medical coverage without proper notification from PHS, it is reasonable to assume that many of the enrollees have and many may experience such harm in the future based on the nature of the allegations and the fact that the suit concerns government policies that have been in place for some time. *See Carr v. Wilson–Coker,* No. CIVA3:00CV01050(AWT), 2001 WL 335836, *7 (D.Conn. March 30, 2001); 1 Newberg, H. and Conte, A., *Newberg on Class Actions,* § 3.07 (3d ed.1992) (explaining when courts may consider individuals who might

---

7. A court is to determine whether a class may be maintained as soon as is practicable. *See* Rule 23(c)(1). However, "a district court may be reversed for premature certification if it has failed to develop a sufficient evidentiary record from which to conclude that the requirements of numerosity, typicality, commonality of question, and adequacy of representation have been met." *Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 571 (2d Cir.1982). For instance, a court may allow discovery and conduct hearings to determine whether the requirements of Rule 23 are satisfied. *See id.* In particular, discovery may be needed to determine the adequacy of representa-

tion. *See Chateau de Ville Prods., Inc. v. Tams–Witmark Music Library, Inc.,* 586 F.2d 962, 966 (2d Cir.1978). Here, the parties have been engaged in discovery for some time. In support of the motion for class certification, the parties have produced a sufficient evidentiary record to allow the Court to determine that the requirements of Rule 23 have been satisfied. Not only have they provided the Court with numerous examples of the notices of action sent by PHS, but both parties have also included several documents indicating PHS's policy regarding denials of coverage and prescription benefits.

be injured in the future as potential class members in cases involving declaratory and injunctive relief against the government). Similarly, to the extent that the plaintiff's complaint alleges delay based upon the approval process for medications not included in PHS's prescription drug formulary, all enrollees who have obtained prescription drugs are subject to this harm, and it is reasonable to assume that many of the enrollees will avail themselves of their prescription drug benefits in the future.[8]

The plaintiffs have further demonstrated that the plaintiffs' allegations are not isolated incidents experienced only by the named plaintiffs, but that they are shared by many other enrollees. For instance, they have provided evidence to support their argument that any alleged insufficiencies in the coverage denial notification process may be attributed to a systemic problems within PHS, and thus may potentially affect all participants in the PHS plan. *See* Pls.' Supp.Br., Exs. X, Y. They also have produced numerous examples of allegedly insufficient notices of action received by the named plaintiffs, as well as several other individuals, again indicating that the size of the plaintiff class is large. *See id.,* Exs. 12–15, 17–19. In addition, while PHS has apparently changed its policies with respect to prior approvals for certain prescription medications, the plaintiffs have also produced evidence that PHS's system-wide practices still may be legally insufficient, evidence which again suggests that many individuals comprise the proposed plaintiff class. *See id.* Ex. 4. For these reasons, the plaintiffs' estimate of the size of this class is reasonable.

Based on the large number of enrollees, the Court concludes that the proposed plaintiff class is so great as to make joinder impractical. Further, as the plaintiffs contend, the limited financial and educational status of many of the proposed class members, and the resulting difficulty that they may have in obtaining information about their Medicaid rights, also contributes to the impracticality of joinder. *See Ladd v. Thom-*

as, 3:94CV1184 (JBA), Ruling on Pls.' Mot. for Class Certification (Doc. 15) (D.Conn. Sept. 30, 1996) (citing *United States ex rel. Morgan v. Sielaff,* 546 F.2d 218, 222 (7th Cir.1976)). Thus, the plaintiffs have satisfied the numerosity requirement of Rule 23(a).

### 2. Commonality of Claims

"The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Marisol A.,* 126 F.3d at 376. However, there is no requirement that the claims of all the potential class members share have every issue of law and fact in common. *See Newberg on Class Actions,* § 3.05. "An alleged common course of conduct is sufficient to satisfy the common question requirement of F.R.Civ.P. 23(a)(2)." *Garfinkel,* 695 F.Supp. at 1402 (quotation omitted). Here, the plaintiffs' claims meet this standard.

Each member of the proposed plaintiff class receives or has received health care through PHS's Medicaid plans pursuant to the contract between DSS and PHS. As a result, each potential class member is at risk of suffering the same harms alleged by the named plaintiffs: denials of coverage without proper notification, lack of adequate hearing rights to challenge denials, and the inability to apply for and receive certain prescription drug benefits without delay. From these allegations arise several common legal issues, including whether the notice and denial procedures of PHS violate Medicaid statutes, due process, and state law, and whether the Commissioner has committed similar violations based upon its contract with PHS.

The defendants argue that the Court should certify three separate classes because the proposed plaintiffs do not share all of their claims and because each claim is dependent on factual circumstances unique to each individual. However, this argument misstates the commonality requirement.[9] While plaintiffs' claims must share a common issue of law or fact, *see Marisol A.,* 126 F.3d at 377, the fact that each plaintiff "has his or her

---

8. It also appears that most, if not all potential class members who are denied coverage could avail themselves of an expedited hearing process.

9. *See* Section II.E., *infra,* for the discussion concerning the certification of a separate subclass by the Court here.

own circumstances" does not preclude certification where plaintiffs "are challenging common conditions and practices under a unitary regime." *Baby Neal v. Casey*, 43 F.3d 48, 60–61 (3d Cir.1994) (noting that all the plaintiffs in that case shared "the essential circumstance of being in the custody of DHS"). Here, all the plaintiffs share the common circumstance of being enrolled in the PHS medical plan, and as such, they are subject to the violations of state and federal law alleged by the plaintiffs. Further, as in *Marisol A.*, "the plaintiffs allege that their injuries derive from a unitary course of conduct by a single system," in this case, the Medicaid system of benefits as operated through DSS and PHS. 126 F.3d at 377. Based on these similarities, the claims of the proposed class meet the commonality requirement.

### 3. Typicality of Claims and Defenses

■ "Typicality ... requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (citation omitted). The typicality requirement limits the class claims to those fairly encompassed by or interrelated with the named plaintiffs' claims. *See Gen. Tel. Co.*, 446 U.S. at 330, 100 S.Ct. 1698. "Minor conflicts, however, do not make a plaintiff's claims atypical; it is when the conflict goes to the very subject matter of the litigation that the conflict will defeat the claim of representative status." *Walsh v. Northrop Grumman Corp.*, 162 F.R.D. 440, 445 (E.D.N.Y. 1995).

■ Here, the named plaintiffs' complaint contains three principal allegations: (1) that the defendants failed to provide notice of action when PHS denied coverage for a particular medical benefits and prescriptions; (2) that when PHS did provide such notice, it was legally insufficient; and (3) that the defendants failed to provide pharmacy benefits with reasonable promptness due to the operation of the pre-approval procedure in PHS's

preferred drug formulary system. These claims arise from the same course of events—the denial of coverage for medical services and prescription drugs by PHS. Each class member would presumably make similar legal arguments to demonstrate the defendant's liability, as all would contend that the policies of PHS and the Commissioner violate the same Medicaid statutes, state laws, as well as due process. Further, like the named plaintiffs, the potential class members are subject to the same claimed deficiencies in the defendants' notification and hearing procedures. The potential class members are also in the same position with regard to adequate hearing procedures for challenging coverage denials because of the failure of DSS to institute such procedures. While the named plaintiffs may have experienced denials of coverage for reasons that differ from those experienced by certain class members, their claims all arise from the same scenario—a denial of coverage about which they were unaware or at least not made aware of in a timely fashion.

PHS argues that the plaintiffs have failed to establish that their claims are susceptible of class-wide proof. However, the Court finds that the plaintiffs' allegations and the evidence presented in connection with their motion for class certification demonstrates that the alleged insufficiencies are systemic, not isolated occurrences, and thus may be supported by class-wide proof. For example, plaintiffs point to the September 1999 report by PHS and three other managed care organizations which states that under their interpretation of DSS regulations, they need not issue notices of actions in cases of partial denials of coverage. *See* Impact of Medicaid Managed Care on the Delivery of Mental Health Srvs. To Children, at 10.[10]

PHS also contends that some of the claims of the named plaintiffs are not typical of the potential class members because each of their claims would require PHS to put forward a unique defense. For instance, with respect to the claims that PHS did not provide a pharmacy benefit with reasonable

---

**10.** The Court has reviewed the exhibits submitted by the plaintiffs under seal and finds that they

support this conclusion as well.

promptness, PHS notes that it would present the following defenses: (1) that Karen L. has not adequately alleged that she availed herself of pharmacy benefits; (2) that K.P. received his prescription within a minute of when it was requested; (3) that any delay suffered by A.M. was attributed to, among other things, her physician's failure to seek prior authorization and apparent miscommunication between her mother and her physician; and (4) that Ms. Hernandez's claims of delay are now moot. As the defendants argue, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990) (noting that this concern also goes to the "adequacy of representation" requirement). Here, it is apparent that PHS could choose to rebut the particular situation of each of the named plaintiffs. However, the plaintiffs in the main are challenging the policies of PHS and the Commissioner as they relate to notification, the operation of the preferred drug formulary, and the availability of an expedited appeals process to challenge denials of coverage. While the effects of these alleged failures will inevitably depend, at least in part, on the individual circumstances of each plaintiff, defenses asserted by PHS will likely need to focus also on the legal adequacies of such policies, not their operation in any particular case. The defendants may later argue that their actions were legally sufficient and their notices were adequate, but those are factual issues to resolve subsequently, not through the motion for class certification, when a court is not permitted to consider the merits of the case. *See Eisen,* 417 U.S. at 177–78, 94 S.Ct. 2140.

#### 4. Adequate Representation

The named plaintiffs further contend that they will fairly and adequately protect the interests of the potential class members because (1) their counsel, New Haven Legal Assistance and Connecticut Legal Services, are experienced in class action litigation, and (2) the named plaintiffs have no interests adverse to those of the potential class members in this case. They seek to enforce federal statutory and constitutional rights in a manner that would apply equally to all potential class members.

The defendants do not challenge the competence of plaintiffs' attorneys; nor do they contend that the named plaintiffs' interests are adverse to those of the potential class members. Instead, PHS argues that the plaintiffs are not adequate class representatives because they lack standing to assert state law claims. They contend that the plaintiffs' allegations in support of those claims are overly broad, and that each has not suffered injuries arising from the illegalities alleged. Specifically, they argue that Karen L. and K.P. do not adequately represent the potential class members who claim that they did not receive pharmacy benefits reasonably promptly. As the Second Circuit stated,

> At the core of the standing doctrine is the requirement that a plaintiff allege personal injury fairly traceable to the defendant's 'allegedly unlawful conduct and likely to be redressed by the requested relief. . . . For a plaintiff to have standing to request injunctive or declaratory relief, the injury alleged must be capable of being redressed through injunctive relief at that moment. . . . The plaintiff may meet this standard by alleging that the defendant was engaging in the unlawful practice against the plaintiff at the time of the complaint.

*Robidoux v. Celani,* 987 F.2d 931, 938 (2d Cir.1993) (citations omitted); *see also City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (holding that the standard is also met when a plaintiff has suffered injury and there is a substantial likelihood that he will be subjected to the allegedly unlawful policy in the future).

■ Here, K.P. alleges that the delay in his obtaining the topical anesthetic was attributable to system-wide defects in the operation of the drug formulary system. Further, Karen L. did not suffer a denial of prescription benefits, but like the other class members, she is subject to the threat of future denials. At the time they entered this case, Karen L. and K.P. each were in a position such that the harm they alleged could be remedied through injunctive relief.

Thus, both plaintiffs are adequate representatives of for the pharmacy benefit claims.

### C. Rule 23(b)(2) Applied to the Instant Case

The plaintiffs contend that Rule 23(b)(2) permits this case to proceed as a class action because the defendants have acted or refused to act on grounds generally applicable to the class, thereby justifying declaratory or injunctive relief on a class-wide basis. The defendants oppose class certification based on the so-called "necessity doctrine," arguing that even if the plaintiffs meet the requirements of Rule 23(a), a class action is unnecessary because any declaratory or injunctive relief awarded to the named plaintiffs would inure to the benefit of the proposed class, regardless of whether the class is certified. As a result, they argue that class certification is not needed and the requirements of Rule 23(b)(2) are not met in this case.

Under a line of cases beginning with *Galvan v. Levine*, 490 F.2d 1255 (2d Cir.1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974), courts in this circuit have indicated that class certification is not necessary when plaintiffs seek certain kinds of injunctive and declaratory relief against a government official or agency. *See, e.g., Berger v. Heckler*, 771 F.2d 1556, 1566–67 (2d Cir.1985) (holding that class certification is not necessary in an action against the Department of Health and Human Services when the Secretary agreed to the enforcement of a decree in favor of nonparties to the suit); *Lincoln Cercpac v. Health and Hosps. Corp.*, 920 F.Supp. 488, 493 (S.D.N.Y.1996) (noting that "[i]f plaintiffs are granted their relief, it will affect all former and future CERC patients irrespective of whether they are included in a class action"). In *Galvan*, the court explained the justification for this rule,

[I]nsofar as the relief is prohibitory, an action seeking declaratory or injunctive relief against state officials on the ground of unconstitutionality of a statute or administrative practice is the archetype of one where class action designation is largely a formality ... [W]hat is important in such a case for the plaintiffs or, more accurately, for their counsel, is that the judgment run to the benefit not only of the named plaintiffs but of all other similarly situated.

490 F.2d at 1261. The Court also reasoned that class certification was not needed because the State of New York had acknowledged the applicability of a judgment to individuals other than the plaintiff, and had voluntarily taken concrete steps towards redressing the alleged harm. *Id.* ("The State has made clear that it understands the judgment to bind it with respect to all claimants; indeed even before entry of judgment, it withdrew the challenged policy even more fully than the court ultimately directed and stated it did not intend to reinstate the policy."). The Second Circuit later clarified this standard, explaining that "[s]ince it is ordinarily assumed that state officials will abide by the court's judgment, where the State has admitted the identity of issues as to all potential class litigants class certification is indeed unnecessary." *Hurley v. Ward*, 584 F.2d 609, 611–12 (2d Cir.1978); *Loper v. New York City Police Dep't*, 135 F.R.D. 81, 83 n. 1 (S.D.N.Y.1991).

Several cases have distinguished *Galvan* in part based on the difference between prohibitory and mandatory relief.[11] In *Connecticut State Dep't Soc. Servs. v. Shalala*, for example, the district court held that the plaintiffs' declaratory and injunctive claims against the Department of Health and Human Services would not preclude class certification. *See* No. 3:99CV2020 (SRU), 2000 WL 436616 (D.Conn. Feb. 28, 2000). The plaintiffs in *Shalala* moved for class certification based

---

11. A prohibitory injunction "seeks only to maintain the status quo," but a mandatory injunction "is said to alter the status quo by commanding some positive act." *Tom Doherty Assocs., Inc. v. Saban Entm't*, 60 F.3d 27, 34 (2d Cir.1995). As PHS points out, the Second Circuit has expressed some reservation at a court's ability to discern "whether the status quo is to be maintained or upset." *Id.* However, in this case, the plaintiffs clearly allege that the status quo is inadequate and request the Court to order the defendants to act in a different manner. Further, although PHS questions the court's reliance upon the distinction between prohibitory and mandatory relief, it does not argue that the relief sought by the plaintiffs is prohibitory in nature.

on the Department of Health and Human Services' failure to provide written, timely and accurate coverage decisions to dually eligible Medicare and Medicaid recipients in Connecticut who were receiving home health care services and who had filed coverage claims with an intermediary. *See id.* at *1. In granting the motion for class certification, the district court rejected the defendant's contention that class certification was unnecessary because any benefit to the named plaintiffs would inure to the proposed class. *See id.* The court reasoned that, because the plaintiffs sought both prohibitory and mandatory injunctive relief, and because the defendant had not formally committed to granting class-wide relief or otherwise addressed the plaintiffs' concerns, the situation differed from *Galvan* and merited class certification. *See id.* at *2–3 (noting also that the named plaintiffs' claims were likely to become moot); *Jane B. v. New York City Dep't Soc. Servs.,* 117 F.R.D. 64 (S.D.N.Y.1987) (distinguishing *Galvan* on the grounds that the plaintiffs in the instant case were seeking relief "that would require defendants to take affirmative steps to remedy existing unconstitutional conditions . . . and to implement standards that comport with the mandates of federal and state laws and regulations"); *see generally Marisol A.,* 126 F.3d at 378 (holding that the district court did not abuse its discretion in certifying a class in an action where plaintiffs sought declaratory and injunctive relief from "central and systemic failures" of the welfare system), *Comer v. Cisneros,* 37 F.3d 775, 796 (2d Cir.1994) ("[P]attern of racial discrimination cases for injunctions against state or local officials are the 'paradigm' of Fed.R.Civ.P. 23(b)(2) class action cases.").

■ The plaintiffs here seek mandatory injunctive relief, which is sufficient under *Shalala* to render their class claims not unnecessary. In particular, they request that the Court enter orders requiring PHS to provide substantively adequate written notices to Medicaid managed care enrollees when adverse actions are taken, and directing the Commissioner to ensure that such notices are provided. They also seek expedited state hearings by the Commissioner when coverage is denied. Further, they request

that PHS be required to ensure that Medicaid enrollees can apply and be furnished with prescription drug benefits without delay, and that the Commissioner be required to ensure that no such delay is experienced. The Court concludes that the relief sought is mandatory and therefore class certification is appropriate.

The defendants argue that *Shalala* is not applicable because, unlike the defendant in that case, the defendants here have made a commitment to class-wide relief. In particular, DSS has: (1) issued several memoranda, including a July 2000 policy directive clarifying its policy with respect to notices of partial denials of coverage and stating that managed care organizations such as PHS must issue notices of action in those circumstances; (2) proposed sanctions against PHS; and (3) committed resources to be used to create a "compliance officer" position. *See* Aff. of David Parrella. PHS President Barry Averill stipulated that: (1) PHS intends to follow the DSS's clarification and policy; (2) PHS recognizes its duty to include all of the elements required by Medicaid regulations in its notices of action and intends to continue to include these elements in its notices; (3) PHS recognizes its duty to provide enrollees with a written notice of action following a partial denial; and (4) any judgment of this Court concerning its statutory Medicaid notice duties will bind it with respect to all enrollees in its Connecticut Medicaid plan. *See* Averill Aff., ¶¶ 3–7.

■ The defendants' actions and PHS's stipulation are inadequate for a number of reasons. First, with respect to PHS, the necessity doctrine only applies when the defendants are state officials, *see Galvan,* 490 F.2d at 1261, as "it is ordinarily assumed that state officials will abide by the court's judgment." *Hurley,* 584 F.2d at 611–12. It does not apply to private entities. *See Arthur v. Starrett City Assocs.,* 98 F.R.D. 500, 508 (E.D.N.Y.1983) (holding that the necessity doctrine is not applicable because "three of the four named defendants are not State officials, but private entities," among other reasons). PHS argues, however, that the doctrine applies because it is a state actor by

virtue of its contract with DSS. But PHS is not a government agency and the contract is not enough to apply the necessity doctrine to it.

Second, unlike the defendant in *Galvan* who withdrew the allegedly unconstitutional policy, the defendants here have not taken any "tangible and identifiable steps towards redressing the harms that the plaintiffs attacked." *Shalala*, 2000 WL 436616 at *3. While PHS asserts that any judgment would bind it with respect to all enrollees in the state Medicaid plan, it has stated only that it *recognizes* certain duties under federal Medicaid statutes and it *intends* to continue to include the required elements in its notices of action. It has not stated that it currently meets those standards or that it actually includes the required elements in its notices of action. It also has not indicated whether any judgment would bind past and future enrollees, and has not stipulated that its actions will remedy all of the plaintiffs' claims. Further, while PHS has stated that it considers itself bound by any judgment relating to compliance with Medicaid notice duties, it has not committed to effecting the other relief sought by the plaintiffs. *See Daniels v. City of New York*, 199 F.R.D. 513, 515 (S.D.N.Y.2001) ("[T]here are legitimate concerns over the scope of relief that can be awarded in the absence of class certification."). Finally, the Commissioner has offered no stipulation of its intent to be bound by any judgment. Thus, as in *Shalala*, the assurances of the defendants fall short of those in *Galvan*.

### D. Mootness

The Commissioner also contends that the plaintiffs' claims with respect to the notices of actions has been rendered moot, based on the fact that DSS has demonstrated its commitment to the enforcement of existing contractual requirements by sanctioning PHS and creating a position devoted to assuring contractual enforcement.

▇▇▇▇ To show that a plaintiff's claim is moot, a party who has voluntarily ceased allegedly illegal conduct has "the very heavy burden of demonstrating (1) with assurance that there is no reasonable expectation that the conduct will recur ... and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Comer*, 37 F.3d at 800 (citations omitted). Here, the court concludes that neither the Commissioner nor PHS has sustained this burden. The defendants appear to be taking steps towards remedying the alleged inadequacies, including DSS's issuance of the July 2000 memorandum and PHS's acknowledgment that it intends to follow that policy. However, the defendants at this time still have not demonstrated that the problems of notice and delay with respect to partial denials have not been completely addressed and will not recur, and they have not shown that their commitment to class-wide relief extends to all of the actions that the plaintiffs challenge in their complaint.

### E. Creation of a Subclass

Finally, as stated above, PHS contends that the plaintiffs' claims should be divided into three separate classes pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure. In particular, it suggests that the Court adopt the following plaintiff classes: (1) a class concerning notice of action claims, (2) a class concerning pharmacy benefits, and (3) a class concerning state law claims.

Rule 23(c)(4) provides:

When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, an the provisions of this rule shall then be construed and applied accordingly.

Fed.R.Civ.P. 23(c)(4). The district court's discretion in this area is broad. *See Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999). As the Second Circuit explained,

[T]he district court "is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly," *Robidoux*, 987 F.2d at 937 (citing 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure S1790, at 270–71 (1986)).... [T]he court is empowered un-

**106**

der Rule 23(c)(4) to carve out an appropriate class—including the construction of subclasses. *See* Wright, Miller & Kane, *supra,* at 269–71. The court, however, is not obligated to implement Rule 23(c)(4) on its own initiative. *See United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 408, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (it is plaintiff's burden to show how the action may be subclassed to avoid certification problems and "[t]he court has no *sua sponte* obligation so to act").

*Lundquist v. Security Pacific Auto. Fin. Servs. Corp.,* 993 F.2d 11, 14–15 (2d Cir.1993) (further characterizing the definition of subclasses as the "plaintiffs' burden"). While subclasses are generally employed when the interest of groups of potential class members may conflict, *see Boucher,* 164 F.3d at 118, they also have been permitted when they "will enhance the efficiency of the discovery process and streamline any future motion practice." *Jones v. Goord,* 190 F.R.D. 103, 113 (S.D.N.Y.1999) (permitting division of the class of inmates into subclasses based upon the institution in which they were confined); *see also Marisol A.,* 126 F.3d at 378–79 (concluding in a case involving challenges to the child welfare system that the district court should divide the class into subclasses to ease in discovery and permit the court to "weed out" particular claims).

 Here, the plaintiffs have alleged facts and produced evidence sufficient to show that the four named plaintiffs meet the requirements of Rule 23. There is no indication that subclasses are needed to protect the rights of various class members who might conflict. For instance, plaintiffs' success on the notice of action claims would not compromise the claims relating to delay in receiving prescription benefits, and vice versa. In addition, the Court does not at this time find that subclasses are necessary to make discovery and motion practice any more efficient. Because the plaintiff's claims involve future harm or denials, the fact that a Medicaid participant has not availed himself of the prescription benefit service does not necessarily mean that he will not do so in the future. As a result, the plaintiffs could fall into all of the proposed subclasses, thereby complicating discovery and potentially rendering the classes meaningless. Accordingly, no subclasses will be designated at this time. However, given a court's responsibility to continually reevaluate the appropriateness of class certification, either party may move to modify the class if it becomes apparent that such action would be useful.

### III. Conclusion

The Court hereby certifies a class consisting of the following individuals: "All past, current, and future Medicaid recipients who were or currently are enrolled in, or who in the future will be enrolled in, any managed care plan offered by defendant PHS to Medicaid recipients, under contract with defendant Commissioner."